IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


BILLY CLIFTON STEWART,
        Plaintiff,

vs.                                                            Case No. 5:08cv280/RS/EMT

ERIC J. SMITH, et al.,
        Defendants.
_____/

## ORDER, REPORT AND RECOMMENDATION

Before the court is the seventh amended complaint filed by Billy Clifton Stewart ("Stewart"), who proceeds pro se and in forma pauperis (Doc. 53). Named as Defendants are Florida Commissioner of Education Eric J. Smith ("Smith"); the Florida Department of Education; and the Florida Department of Education, Division of Vocational Rehabilitation ("DVR").[1] In his complaint Stewart alleges violations of the First and Fourteenth Amendments; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and, apparently, state law, all arising from the DVR's termination of vocational rehabilitation services to him.

Stewart alleges the following facts in support of his claims.[2] In 2007 Stewart was a client of the DVR with the employment goal of becoming a public school teacher (Doc. 53 at 3).[3] Stewart appeared for an interview with DVR counselor Brian Mingo ("Mingo") on September 19, 2007, at the DVR building in Fort Walton Beach, Florida. During the course of the interview, Mingo ordered

---

[1] As the docket does not now reflect either of the two latter Defendants, to the extent these Defendants are distinct entities subject to suit separately, the clerk shall be directed to add them both as parties.

[2] The facts are taken from the Statement of Facts section of the lengthy seventh amended complaint (Doc. 53 at 3, 5–23). Although much of the verbose and disjointed complaint is difficult to follow, the court has made its best effort to comprehend Stewart's allegations and fairly present them.

[3] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those Stewart may have assigned. In part, the court relies on the docketing system's numbering because Stewart misnumbered the pages of the complaint, identifying two pages as "Page 4" (*see id.* at 4–5). The court additionally notes that a result of Stewart's misnumbering is a complaint of twenty-six pages in length, even though the court previously directed Stewart to file a complaint no longer than twenty-five pages (*see* Doc. 47 at 6).

Stewart to leave, and he then terminated the DVR's services to Stewart by closing his case (*id.* at 3, 17). Mingo closed his case, Stewart asserts, because Stewart refused to agree to Mingo's demand that Stewart change his employment goal from teaching in a public school to teaching in a prison or other adult education program. Mingo signed a letter formally advising Stewart that his case file had been closed, but the letter was not sent to Stewart until late October 2007 (*id.* at 16). This one-month delay forced Stewart to file a petition for review without having a statement explaining why his case had been closed. Had Stewart not gone ahead and nevertheless filed his petition within the twenty-one day statutory period without the closure letter, he alleges, he could have been time-barred from appealing (*id.* at 7).

On August 8, 2008, Smith signed a final order adopting the recommended order of an administrative law judge ("ALJ") on Stewart's petition for review (identified by Stewart as Department of Administrative Hearings ("DOAH") Case No. 07-4625CVR) (Doc. 53 at 3). According to Stewart, Smith's order was not in compliance with the Administrative Procedures Act (*id.* at 23). The order ignored the due process issues Stewart had raised in his petition and instead addressed only those issues "chosen by the state" (*id.* at 3).[4] Stewart asserts that in the past DVR staff had "denied the Stewart both inner and outer agency procedural due process on important issues of substantial interest," including termination of services to him on many occasions prior to September 2007, and that he had made Smith aware of such actions through numerous facsimile and regular post submissions to him (*id.* at 7). In connection with the September 2007 appeal, Stewart sent two items to Smith on July 21, 2008; "more" items on July 23, 2008, July 27, 2008, and August 3, 2008; and "three more" items on August 6, 2008 (*id.* at 12). These materials included "swim

---

[4] Stewart does not attach a copy of Smith's order to his seventh amended complaint, but he states that his petition "listed much more important things as his own issues . . . than [just] that one case file closure occurring on September 19, 2007" (Doc. 53 at 7). More specifically, as outlined below, Stewart asserts that "the main issues of the Stewart's 2007 Petition for a fair hearing was [sic] to account for the since[-]then located missing files, and to have the improper case file closures done . . . before 2007 to be addressed formally" (*id.* at 10).

Based on Stewart's allegations, it is evident that Smith's August 2008 order addressed the circumstances surrounding the September 2007 case closure. With respect to that matter, Stewart asserts Mingo testified at an administrative hearing that he wanted Stewart to change his employment goal because he feared Stewart would hallucinate or have temper outbursts if his individualized plan for employment ("IPE") [a signed agreement between Plaintiff and the DVR] were implemented (*id.* at 5). According to Stewart, Mingo's testimony was contrary to that given by his supervisor, John Mira, who stated at the hearing that Stewart's file was closed because Stewart had not complied with his IPE by going to work. In fact, Stewart contends, Mira's testimony was false because the IPE had not been completed when his case was closed, and he had never been directed to go to work (*id.* at 5–6). Stewart additionally asserts that Mingo's testimony was contrary to Smith's stated reason for rejecting his petition, which was that Stewart refused to cooperate with treatment demands for what were described as Stewart's "impairments" (*id.* at 6). Stewart rejects the notion that he has a mental impairment (*id.* at 8). Stewart contends that he made a tape recording of his interview with Mingo which reflects neither a demand by Mingo to undergo treatment nor a refusal by Stewart to accept treatment (*id.* at 13). Moreover, Stewart submits, numerous "professional evaluators involved in the case disagreed with [Smith's] and [Mingo's] personal opinions" about Stewart's mental health status, concluding that he was mentally fit for employment (*id.* at 13–14; *see also id.* at 15–16).

Case No. 5:08cv280/RS/EMT

tapes" showing Stewart at work as a swimming teacher and answering-machine tapes that demonstrated Stewart's "prominent place as a sought after professional skills person in the community" (*id.* at 8). When Stewart inquired of Smith's staff regarding the items, they informed Stewart that the materials had simply been forwarded to DVR's counsel without Smith's reading or reviewing any of them himself (*id.* at 8, 12). In addition to ignoring the issues raised by Stewart in his petition, Stewart asserts, Smith's order adopted findings of fact which Smith had to have known were false based on the materials Stewart had provided to him (*id.* at 16–17, 23). Moreover, Smith must have known that Stewart continued to be denied services from the DVR after his case was closed in September 2007 even though Stewart repeatedly requested the reinstatement of services (*id.* at 18). Stewart also asserts that he transmitted a letter by facsimile to Smith on May 15, 2008, requesting an investigation into the wrongful acts of DVR staff (Doc. 53 at 9). These acts included the false statements that certain of Stewart's DVR case files—for which Stewart had made dozens of unsuccessful public records requests—had been destroyed when in fact not all of the files had been destroyed. Rather, as Stewart apparently learned in February 2009 following an investigation by the Inspector General of the Florida Department of Education, some of his records (along with those of many other persons) had been maintained "illegally" in the home of a DVR administrator (*id.* at 9). According to Stewart, Mingo closed his case in September 2007 in retaliation for Stewart's persistence in pursuing the release of his other closed case files and to "discredit the Stewart's efforts to point out extreme and illegal behavior that had been engaged in by DVR staff members" (*id.* at 10). Stewart additionally alleges that on September 19, 2007, the DVR's attorney acknowledged one of Stewart's many requests for records—case files Stewart previously had been told had been destroyed—but demanded over $500.00 for photocopies (Doc. 53 at 11). Approximately one month later, however, the Governor's office "forced [the DVR] to grant the Plaintiff access to thousands of pages . . . " of documents at no charge (*id.*). Stewart concludes the facts of his complaint by, *inter alia*, outlining the numerous errors he contends Smith made in issuing the final order in Case No. 07-4625CVR (*see id.* at 17–23).

According to Stewart, "the issue here in this complaint is the denial to [Stewart] by [Smith] of any procedural due process in the hearing on the two very substantial issues that the Plaintiff actually listed in his request for a fair hearing but which were ignored," i.e., the "missing files" and the prior file closures (Doc. 53 at 10, 19). Stewart asserts four claims arising from the central due process issue he identifies: (1) by issuing the August 8, 2008, final order in Case No. 07-4625CVR which he knew contained false findings of fact and did not address the issues raised by Stewart, Smith denied Stewart due process under the Fourteenth Amendment (*id.* at 24); (2) by failing to acknowledge Stewart's "pleas for him to respond to the Stewart's grievances in some inner agency

way," Smith violated Stewart's right to redress of grievances under the First Amendment (*id.* at 25); (3) by issuing the August 8, 2008, final order, Smith took part in a "colluded Section 504 of the Rehab. Act. Violation" and he otherwise violated the Rehabilitation Act by "overseeing a denial of [DVR] services to Stewart . . . "(*id* at 25–26); and (4) by denying Stewart's Fourteenth Amendment rights Smith violated the Administrative Procedures Act (*id.* at 26). As relief for these alleged violations, Stewart seeks 2.5 million dollars in compensatory damages and 3 million dollars in punitive damages (*id.* at 4).

Because Stewart is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989). Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," *id.*, 490 U.S. at 327, or when the claims rely on factual allegations that are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 31, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to plaintiff. Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). The complaint may be dismissed if the facts as plead do not state a claim to relief that is plausible on its face. *See* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561–63, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (retiring the often-criticized "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim). Also, as applies in the instant matter, pro se pleadings are held to a less stringent standard than is applied to pleadings prepared by an attorney, and they must be construed liberally. Haines v. Kerner, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006). Upon review of the complaint, the court concludes that, as to the Florida Department of Education and the DVR, Stewart seeks monetary relief against Defendants which are immune from such relief. Additionally, as to Smith, Stewart has failed to state a plausible claim to relief. Therefore, dismissal of this action is warranted.

In reviewing Stewart's claims, the court focuses on the issue identified by Stewart, i.e., that Smith's adopting the ALJ's recommended order—which addressed the September 2007 case closure but did not address Stewart's complaints about the "missing files" and earlier-closed case

files—denied him procedural due process. Briefly addressing Count 4 first, the court notes that, to the extent Stewart asserts that in issuing the final administrative order Smith violated Florida's administrative procedures act, "federal courts do not have the authority to compel state actors to comply with state law." Doe v. Bush, 261 F.3d 1037, 1055 (11th Cir. 2001) (citing Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 106, 104 S. Ct. 900, 911, 79 L. Ed. 2d 67 (1984)). Furthermore, insofar as Stewart seeks review of Smith's order pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 701–706, the federal APA does not apply to state agencies but rather only to federal agencies. Doe, 261 F.3d at 1055 (citing 5 U.S.C. § 701(b)(1), which defines an "agency" as "each authority of the Government of the United States"); *see also* Sw. Williamson County Community Ass'n v. Slater, 173 F.3d 1033, 1035 (6th Cir. 1999), and Karst Environment. Educ. & Prot., Inc. v. EPA, 475 F.3d 1291, 1298 (D.C. Cir. 2007). Count 4 therefore fails to state a plausible claim to relief.

Counts 1 and 2, Stewart's First and Fourteenth Amendment claims, arise under 42 U.S.C. § 1983. To the extent Stewart sues the Defendants for money damages, his §1983 claims are barred by the Eleventh Amendment. Suits against a state or its agencies "for the recovery of money from the state" are barred by the doctrine of state sovereign immunity. Edelman v. Jordan, 415 U.S. 651, 672, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974). Sovereign immunity extends not only to the state itself, but to "arms of the state"; i.e., its agents and instrumentalities. Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003). The Department of Education, and its Division of Vocational Rehabilitation, are arms of the state. Accordingly, these Defendants are entitled to sovereign immunity from Stewart's § 1983 claims for money damages. Moreover, a suit against a state employee in his official capacity is deemed to be a suit against the state for Eleventh Amendment purposes. *See* Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45, 58 (1989); Smith v. Allen, 502 F.3d 1255, 1272 (11th Cir. 2007). The Eleventh Amendment therefore bars a suit for monetary damages against Smith acting in his official capacity. In short, Stewart may not bring a § 1983 action for monetary damages against the Florida Department of Education, the DVR, or Smith in his official capacity. Miller v. King, 384 F.3d 1248 (11th Cir. 2004).

Stewart also appears to sue Smith in his individual capacity. As to Count I, Stewart's Fourteenth Amendment claim, the initial question with any due process challenge is whether the injury claimed by the plaintiff is within the scope of the due process clause, Behrens v. Regier, 422 F.3d 1255, 1259 (11th Cir. 2003) (citing Smith ex. rel. Smith v. Siegelman, 322 F.3d 1290, 1296 (11th Cir. 2003)), which provides that no state shall "deprive any person of life, liberty or property without due process of law." Due process is comprised of both a procedural and a substantive

component. A § 1983 action alleging a violation of procedural due process requires proof of "a deprivation of a constitutionally-protected . . . property interest." Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994). Property interests are not constitutional in origin. Greenbriar Vill., L.L.C. v. Mountain Brook, City, 345 F.3d 1258, 1262 (11th Cir. 2003) (citing Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2705, 33 L. Ed. 2d 548 (1972)). Rather, "[p]roperty interests protected by the Constitution are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . . " Silva v. Bieluch, 351 F.3d 1045, 1047 (11th Cir. 2003) (quotation omitted). The substantive component of the due process clause protects rights that are "fundamental," that is, rights that are implicit in the concept of ordered liberty. Behrens, 422 F.3d at 1264 (quoting McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994) (internal quotations omitted)). Fundamental rights are those rights created by the Constitution. Greenbriar Vill., L.L.C., 345 F.3d at 1262 (citing DeKalb Stone, Inc. v. County of DeKalb, Ga., 106 F.3d 956, 959 n.6 (11th Cir. 1997)). Under substantive due process, an individual is protected against arbitrary exercises of government power, but "only the most egregious official conduct can be said to be arbitrary in the constitutional sense. " County of Sacramento v. Lewis, 523 U.S. 833, 845–46, 118 S. Ct. 1708, 1716, 140 L. Ed. 2d 1043 (1998) (citation and internal quotation marks omitted). To be arbitrary in the constitutional sense, an executive abuse of power must "shock[ ] the conscience." *Id.* at 846.

In this case, Stewart has no fundamental right, i.e., one created by the Constitution, to receive vocational rehabilitation benefits. Nor do Stewart's allegations that Smith sanctioned the termination of his DVR services implicate official conduct so egregious that it "shocks the conscience." Thus Stewart has no basis for claiming a substantive due process violation.

Stewart contends he was denied procedural due process. The due process clause "requires notice and the opportunity to be heard incident to the deprivation of life, liberty or property at the hands of the government." Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003). To establish a violation of this clause in the context of a § 1983 claim, a plaintiff must establish: (1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process. *Id.* The court will assume that Stewart has alleged the existence of a constitutionally protected property interest in his receipt of the DVR's vocational services, of which he was deprived through DVR's termination of his case. The court therefore considers whether Stewart has alleged facts sufficient to suggest that Smith provided him with constitutionally inadequate process when he denied Stewart's September 2007 petition.

Stewart alleges that he received untimely notice of the September 2007 case closure, but he suggests that Mingo was responsible for the late notice, not Smith. In any event, Stewart's

Case No. 5:08cv280/RS/EMT

allegations indicate that, regardless of when he received official notice of the closure of his case, he was not prevented from timely filing his petition for review.  Thus Stewart has not alleged that he failed to receive constitutionally adequate notice of the state's action.  Nor are Stewart's allegations sufficient to suggest that he was prevented from being fully and fairly heard on his petition.  Stewart notes that he participated in an evidentiary hearing on the petition before the DOAH at which he appeared and numerous witnesses testified (*see* Doc. 53 at 5–6, 14, 16–17).  Moreover, although Stewart takes issue with Smith's decision to adopt the ALJ's recommended order, including his acceptance of "false facts" and ignoring Stewart's complaints about prior case closures, his arguments raise no constitutional concerns.  Stewart states he had only twenty-one days in which to file his petition following the September 19, 2007, termination of the DVR's services to him.  Nevertheless, as the allegations of the complaint reflect, in his petition for review Stewart attempted to present other issues, which although perhaps consistent in theme, were distinct from that specific event—issues involving events that clearly had occurred beyond the twenty-one day statutory period.  Based on Stewart's allegations, the issues Smith addressed and decided in his August 8, 2008, order were those that were timely appealed and pertained to the September 19, 2007, file closure.  Moreover, Stewart apparently acknowledges that the evidence he attempted to present to Smith personally, but which was forwarded to the DVR counsel, was part of the record before Smith, even if Smith rejected or did not rely on that evidence in signing the final order.  It therefore appears from the allegations of the seventh amended complaint that Stewart received the process to which he was entitled.  In short, the court concludes that Stewart's allegations are insufficient to show that Smith afforded Stewart constitutionally inadequate process with respect to the final order issued August 8, 2008.  As Stewart therefore has failed to make out a plausible procedural due process violation, Count 1 is subject to dismissal.

      Count 2 is Stewart's First Amendment claim.  The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances."  This right includes the right of every citizen to access to the courts.  California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 92 S. Ct. 609, 30 L. Ed. 2d 642 (1972).  The clause also guarantees "the right to petition for redress of grievances, through available procedures, any department of the government, including state administrative agencies."  Gillard v. Norris, 857 F.2d 1095, 1101 (6th Cir.1988) (citing Gearhart v. Thorn, 768 F.2d 1072 (9th Cir. 1985)).  To state a claim for a violation of this right, a plaintiff must allege that the procedures available to challenge the DVR's actions were constitutionally inadequate. *See, e.g.*, Jackson v. City of Columbus, 194 F.3d 737, 748–749 (6th Cir. 1999), overruled on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 n.2, 515, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); Swekel v. City of River Rouge, 119 F.3d 1259, 1265 (6th Cir.

1997) (Merritt, J. concurring). Based on Stewart's failure to sufficiently allege facts supporting this requirement, as discussed above in connection with his procedural due process claim, the court concludes that Stewart has also failed to allege a plausible First Amendment claim.

In Count 3 Stewart seeks relief pursuant to the Rehabilitation Act of 1973. This Act provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability . . . be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). The elements of a claim under the Rehabilitation Act are: (1) that the plaintiff is a "handicapped individual" within the meaning of the Act; (2) that he is "otherwise qualified" for the benefit sought; (3) that he was discriminated against solely by reason of his handicap; and (4) that the program or activity in question receives federal financial assistance. Schiavo ex. rel. Schindler v. Schiavo. 403 F.3d 1289, 1300 (11th Cir. 2005), citing Grzan v. Charter Hosp. of Northwest Indiana, 104 F.3d 116, 119 (7th Cir. 1997) (quotations omitted). A private right of action is available for violations of this provision. Barnes v. Gorman, 536 U.S. 181, 185, 122 S. Ct. 2097, 153 L. Ed. 2d 230 (2002).

Here, Stewart's claim falters at the first and third elements. As to the first element, Stewart denies that he suffers from a disabling mental condition, pointing to the reports of several mental health professionals in support (*see* Doc. 53 at 8, 14–15). And his statements regarding any physical disability are too vague to show that he is a "handicapped individual" within the meaning of the Rehabilitation Act. Stewart simply states that he is "severely disabled (in several separate ways)" and has "severe physical impairments (some of which are potentially life threatening) . . . though he actually lives a normal but pain[-]filled life . . . (*id.* at 25–26). Stewart never identifies the nature of his disabling condition. Even if Stewart's statements regarding his disability were sufficient to satisfy the first element, he has not alleged any facts sufficient to satisfy the third element. While Stewart apparently sought services from the DVR to address a disability, he has not alleged facts that tend to show he was denied rehabilitation benefits because of that disability. This failure is fatal to Stewart's Rehabilitation Act claim. *See* Hamilton v. Florida Dept. of Education/Vocational Services, 152 Fed. App'x 771, 773 (11th Cir. 2005).

As a final matter, the court notes that Stewart has moved, apparently pursuant to Fed. R. Civ. P. 42(a), to consolidate this action with Case No. 5:09cv285/RS/MD[5] (Doc. 56). In light of the court's conclusion that the instant action should be dismissed, the motion to consolidate is moot; in any event, Stewart will suffer no prejudice from the denial of his instant motion as the progress of

---

[5] Case No. 5:09cv285/RS/MD is the lead case in a consolidated action which also includes Case Nos. 5:09ccv286/RS/MD and 5:10cv28/RS/MD.

his other consolidated cases will be unaffected.  Additionally, even if there may be some common questions of law or fact among the four cases—all of which relate to Stewart's long-term efforts to obtain vocational rehabilitation benefits—he names different defendants in the various cases and recites different factual scenarios.  The court therefore concludes that it is not an abuse of discretion to deny the motion.  *See* Young v. City of Augusta, Ga. through DeVaney, 59 F.3d 1160, 1169 (11th Cir. 1995) (noting that even where consolidation would have been warranted, given permissive nature of Rule 42(a) there was no abuse of discretion in denying motion to consolidate; indeed, the court "found no cases [ ] in which a court's refusal to order consolidation has been overturned.").

Accordingly, it is **ORDERED**:

1. The clerk shall add the Florida Department of Education and the Florida Department of Education, Division of Vocational Rehabilitation, as Defendants.

2. Plaintiff Billy Clifton Stewart's motion to consolidate this action with Case No. 5:09cv285/RS/MD (Doc. 56) is **DENIED**.

And it is respectfully **RECOMMENDED**:

1. That this action be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii), for the failure to state a claim on which relief may be granted and for seeking monetary relief against a defendant who is immune from such relief.

2. That the clerk be directed to enter judgment accordingly and **CLOSE** this case.

At Pensacola, Florida this 25th day of October 2010.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**